OPINION OF THE COURT
Edith Miller, J.
On February 24, 1981, it was determined beyond a reasonable doubt at a fact-finding hearing that the respondent committed acts which if committed by an adult would constitute robbery in the second degree and assault in the third degree (two counts). The court found that on February 1, 1981, the respondent, while taking the property (a ring and a purse) from a young girl, assaulted and injured her, and that shortly thereafter he assaulted another young girl. After ordering the required probation investigation and diagnostic assessment, the matter was set down for a dispositional hearing. During the course of the dispositional hearing, respondent’s counsel objected to certain procedural aspects and to the admission of specific evidence.
*1034 Counsel’s first assertion was that the petitioner (in this instance the District Attorney) must bear the burden of proving the disposition recommended by the Probation Department. Pursuant to section 141 of the Family Court Act, the Legislature has given the Judges of the Family Court “wide discretion and grave responsibilities” in order that “its action may fit the particular needs of those before it.” Thus, once a finding of juvenile delinquency has been made, pursuant to a fact-finding hearing, it is the court’s responsibility to decide whether supervision, treatment or confinement is warranted[1] at a dispositional hearing.[2] To exercise its discretion properly and to also be informed of the consequences of each alternative, the court conducts an inquiry. The court’s decision concerning what is an appropriate disposition is based on a preponderance[3] of the “material” and “relevant” evidence[4] introduced at the hearing.
For respondent’s counsel to assert the petitioner must bear the burden of proving the disposition recommended by the Probation Department, implies a misconception of the history and purpose of a dispositional hearing. From its enactment in 1962, until its amendment in 1976, article 7 of the Family Court Act contained no provision even allowing the petitioner to be present at a dispositional hearing. Although section 743 of the Family Court Act[5] now requires the petitioner to be given notice of all dispositional hearings, an opportunity to present evidence of available resources, and an opportunity to be heard regarding the availability and advisability of each disposition provided for by law, from its language, it is clear that the petitioner has the option to appear, but that such presence is not mandatory. As the learned Simon K. Barksky and Richard N. Gottfried noted in the Practice Commentaries (McKinney’s Cons Laws of NY, Book 29A, 1980-1981 Pocket Part, Family Ct Act, § 743, p 303), “This section was included in *1035 part to help effectuate the modification of the ‘purpose’ section of Article 7, which now authorizes the Court to consider the need for protection of the community as well as the best interests of the youth before the court. (Family Court Act, § 711.) The legislature felt that too often there may be no one involved in the dispositional or later proceedings to represent the community’s needs and interests as effectively as counsel for the petitioner might, while the respondent is fully represented by counsel. It was believed that the burden of eliciting information may fall unduly on the judge who, without the presence of counsel presenting the petition, may be denied a full evaluation of dispositional alternatives.” The petitioner’s recent inclusion was thus meant to aid the court in its inquiry. The respondent has traditionally had the right to assist the court through its presentation of evidence, and has fully exercised it. Now, article 7, as amended, also affords the petitioner this opportunity. The court as parens patriae, acting within its discretion, analyzing all the evidence available, must seek out the appropriate disposition, whether or not the petitioner participates. The participation of the petitioner at the hearing does not alter the fact that it is always the courts responsibility to make “its action *** fit the particular needs of those before it.”
The broad discretion that is granted to the court for conducting such an inquiry is bounded by the fact that it must neither preconceive the disposition (Matter of Warren W., 72 AD2d. 585), nor abuse “due process” by omitting from its consideration “material” and “relevant” evidence. (See Matter of Kevin M., 48 AD2d 800, where it was held that the court erroneously denied an examination into a child’s emotional, psychological and educational needs, although the Law Guardian advised the court that mental health reports indicated a need for neurological examination; Matter of Raoul P., 27 AD2d 522, where the court’s refusal to hear a parent was held to be an abuse of discretion and the disposition remanded; Matter of Cecilia R., 36 NY2d 317, where the court’s holding a dispositional hearing without the child’s presence was held to be a violation of due process.)
*1036 Furthermore, a dispositional hearing is analogous to sentencing in an adult criminal case. (Matter of Nathan N., 56 AD2d 554.) CPL 380.50 provides:
“Statements at time of sentence
“At the time of pronouncing sentence, the court must accord the prosecutor an opportunity to make a statement with respect to any matter relevant to the question of sentence. The court must then accord counsel for the defendant an opportunity to speak on behalf of the defendant. The defendant also has the right to make a statement personally in his own behalf, and before pronouncing sentence the court must ask him whether he wishes to make such a statement.
“The court may, either before or after receiving such statements, summarize the factors it considers relevant for the purpose of sentence and afford an opportunity to the defendant or his counsel to comment thereon” (emphasis added).
Its analogue in the Family Court Act is section 743:
“Appearances at juvenile delinquency dispositional hearings. In any juvenile delinquency proceeding under this article, the counsel presenting the petition shall have prior written notice of all dispositional hearings, and shall have the opportunity to participate therein, including but not limited to the right to present evidence of available resources and to be heard regarding the availability and advisability of each disposition provided for by law.” The purpose of both statutes is to afford the People/petitioner the opportunity to assist the court in its evaluation of all alternatives relevant to the sentence/disposition.
Secondly, in the instant case, the District Attorney pursuant to section 743 offered (at the dispositional hearing only) a confession in which the respondent admitted committing crimes independent of those charged in the instant petition. This confession was found to be voluntary at a prior Huntley hearing (concerning a designated felony petition in the Bronx Family Court). Since section 753-a (subd 2, par [b]) of the Family Court Act mandates that the court in considering restrictive placement must consider the record and background of the respondent, including but *1037 not limited to the information disclosed in the probation investigation and diagnostic assessment, and since evidence admitted at a dispositional hearing need not be “competent” only “relevant” and “material”,[6] the confession was admitted into evidence.
The Supreme Court in its landmark decision, Williams v New York (337 US 241), held that a New York Judge, charged with the responsibility of fixing sentence under New York statute, is not restricted by due process to information received in open court (e.g., at trial). The decision was based on the modern philosophy of penology which believes punishment should fit the offender and not the crime, and because the court found the belief no longer exists that every offense committed within a legal category calls for identical punishment without regard to the past life and habits of a particular offender. Subsequent Supreme Court decisions following in the wake of Williams have expanded on this principle. A sentencing Judge has been allowed to consider such diverse factors as a defendant’s truthfulness or mendacity while testifying on his own behalf because it is probative of his attitudes towards society and thus the prospects for his rehabilitation (United States v Grayson, 438 US 41), and a defendant’s refusal to co-operate with government officials investigating a related criminal conspiracy to which he was a confessed participant (Roberts v United States, 445 US 552).
Moreover, the Court of Appeals in People v Jackson (20 NY2d 440, cert den 391 US 928) allowed a confession of other crimes to be admitted at the sentencing stage. In doing so, the court stated (p 455), “The defendant’s argument that his rights were violated by the introduction, without a preliminary ‘Huntley type’ hearing, of certain confessions to other crimes is without merit. Subdivision 3 of section 1045-a of the Penal Law[7] says that in the second stage or sentencing trial ‘evidence may be presented by either party on any matter relevant to sentence including, *1038 but not limited to, the nature and circumstances of the crime, defendant’s background and history, and any aggravating or mitigating circumstances.[8] Any relevant evidence, not legally privileged, shall be received regardless of its admissibility under the exclusionary rules of evidence.’ ” The court did go on to say that the defendant should have an opportunity to object to a confession’s admission on the ground that it was involuntary, and to come forward with some evidence indicating the confession was coerced. This requirement has been met by the aforementioned Huntley hearing and the court’s offer to allow any evidence of coercion to be offered at the instant dispositional hearing. Therefore, the rights to which the respondent is entitled have been safeguarded.
Applying the analogy, relating sentencing to a dispositional hearing, the court finds it is within its discretion to admit the confession. With such a wide range of evidence available for consideration in the sentencing of an adult criminal, it is inconceivable that a Family Court Judge, acting as parens patriae, shouldering a greater responsibility to the child before the court, than a Judge to an adult criminal, cannot consider “material” and “relevant” evidence necessary for determining the best disposition" in terms of the child’s best interest and the need for protection of the community.
Wherefore, having made an examination and inquiry into the facts and circumstances of the case and into the surroundings, conditions and capacities of the persons involved, the court finds upon a preponderance of the evidence that the respondent, Kevin J., requires supervision, treatment or confinement, and more specifically, restrictive placement in accordance with subdivision 2 of section 753-a of the Family Court Act, for the following reasons:
*1039 (1) Respondent cannot reside in his home because the family circumstances are not supportive or nurturing (fully elucidated in the probation report and diagnostic assessment).
(2) Respondent does not respond to community-based activities. Since his arrest for the afore-mentioned designated felony in The Bronx, respondent has been part of the Offender Aid and Restoration Program. Although it has been stated that the respondent participated in group and individual sessions, attending them fairly regularly, he has since entering the program committed the instant designated felony and the subsequent assault. This demonstrates that community-based leaders cannot compensate for his negative home-life environs. If the respondent is permitted to remain in the community, he probably will continue his negative behavior. The respondent is well on his way to becoming a career criminal, and it is urgent that at this juncture in his life the court intervene to divert him from this path.
(3) Respondent has attended school regularly, but has been repeatedly disruptive in class. Perhaps, in a more structured setting this can be overcome.
(4) Respondent has evinced a pattern of criminal activity which must be addressed with seriousness. His negative relationships with his sisters has manifested itself in his choice of victims usually being young girls. The court has an obligation to safeguard other vulnerable young girl§ from possible harm.
(5) One of the respondent’s victims was rendered unconscious by a technique perfected by the respondent whereby he uses his hands and arms to incapacitate his victims. This is significant, as physically assaulting other human beings with one’s own hands requires more malice than harming them or threatening to harm them from a distance with an impersonal weapon.
(6) The court must consider the protection of the community. Respondent needs an opportunity to stabilize. According to the mental health study, respondent is a “troubled youngster with a history of hyperactivity”, who has a conduct disorder in that he is undersocialized, aggressive, *1040 impulsive and in need of psychotherapeutic help. If he is not removed from the community he will continue to have these problems. If he is merely placed in an open setting — outside New York City — now that he is 16 years old, he could easily leave and find his way back to the city. His background indicates that he does not respect adult authority figures, and he believes that he has the right to steal to satisfy his personal needs. From consideration of his two designated felony findings for robbery, the finding of assault, and his own admissions of other crimes, it is clear that he will not easily be diverted from future criminal acts. A closed setting offers him his best chance for rehabilitation while affording the community the protection it is entitled to.
Now, upon the findings made in said fact-finding and dispositional hearings, herein, and upon all proceedings had herein, it is
Adjudged that Kevin J. is a juvenile delinquent on the ground that while 15 years of age, he committed acts, which, if committed by an adult, would constitute the crimes of robbery in the second degree, a designated felony act pursuant to section 712 of the Family Court Act, as defined by section 160.10 of the Penal Law, and assault in the third degree (two counts), as defined by section 120.00 of the Penal Law. Upon further ground that said respondent requires supervision, treatment or confinement, it is therefore,
Ordered, that the proceeding be and the same is hereby continued, and Kevin J., pursuant to the designated felony finding, is placed for a period of three years in the custody of the New York State Division for Youth for confinement in a secure facility for 12 months and may not be released therefrom or transferred to a nonsecure facility during the months of confinement; and it is further,
Ordered, that after the period of confinement in a secure facility, the respondent shall be placed in a residential facility for a period of 12 months and may not be released therefrom; and it is further,
Ordered, that the respondent shall not be discharged *1041 from the custody of the Division for Youth during the term of this order; and it is further,
Ordered, that Kevin J. is placed, pursuant to the assault in the third degree (two counts) finding, for a period of 12 months in the custody of the New York State Division for Youth, a term to run concurrently with the above-mentioned designated felony finding; and it is further,
Ordered, that the Division for Youth shall report to the court pursuant to section 753-a (subd 3, par [c], cl [iv]; subd 4, par [c], cl [iv]) of the Family Court Act.

. Matter of Samuel P., 52 AD2d 552; Family Ct Act, § 712, subd (g).

. Family Ct Act, § 746, subd (a).

. Family Ct Act, § 745, subd (b).

. Matter of Nathan N., 56 AD2d 554; Family Ct Act, §745, subd (a).

. The former section 743 was repealed and its substance transferred to subdivision (g) of section 712 of the act, and a new section 743 was added by the Juvenile Justice Reform Act of 1976 (L 1976, ch 878).

. Family Ct Act, § 745, subd (a); contra § 744, subd (a); Matter of Nathan N., 56 AD2d 554, supra.

. L 1963, ch 994, subsequently superseded by section 125.35 of the Penal Law, which related to the proceeding to determine sentence upon conviction by a jury of murder and appeals from a judgment of death, added L 1965, ch 1030, § 1, amd L 1967, ch 791, § 11, repealed L 1974, ch 367, § 6.

. Generally, the same criteria encompassed in section 753-a (subd 2, pars [a]-[e]) of the Family Court Act:
“(a) the needs and best interests of the respondent;
“(b) the record and background of the respondent, including but not limited to the information disclosed in the probation investigation and diagnostic assessment;
“(c) the nature and circumstances of the offense, including whether any injury involved was inflicted by the respondent or another participant;
“(d) the need for protection of the community; and
“(e) the age and physical condition of the victim.”